IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| DIOCELINA LOPEZ-FLORES, §<br>    *Plaintiff*, §<br>§<br>vs. §<br>§<br>AGENT DANIEL IBARRA, AGENT §<br>URBANO, AGENT SERGIO GARCIA, §<br>and AGENT D.J. GONZALEZ in their §<br>individual capacities, §<br>    *Defendants*. § | CIVIL ACTION NO. _____<br><br>JURY DEMAND |

## ORIGINAL COMPLAINT

Plaintiff Diocelina Lopez-Flores ("Ms. Lopez") files this lawsuit against Defendants U.S. Customs and Border Protection ("CBP") Agents Daniel Ibarra, Agent "First Name Unknown" Urbano, (hereinafter "FNU Urbano" or "Urbano"), Agent Sergio Garcia, and Agent D. J. Gonzalez in their individual capacities alleging violations of her civil rights and requesting relief, under the Fourth and Fifth amendments to the United States Constitution. Plaintiff was granted U nonimmigrant status on or about July 16, 2013, and that status was valid through July 15, 2017. On or about May 12, 2015, Defendants unlawfully detained Ms. Lopez in violation of the Fourth Amendment and removed her from the United States in violation of due process guarantees contained in the Fifth Amendment. Ms. Lopez brings this action to challenge Defendants' unlawful conduct and seeks monetary relief against Defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) ("<u>Bivens</u>").

### JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's <u>Bivens</u> claims is proper under 28 U.S.C. § 1331.

2. Venue is proper in the Southern District of Texas, Brownsville Division under 28 U.S.C.A § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES**

1. Plaintiff Diocelina Lopez-Flores holds U nonimmigrant status in the United States and currently resides in Starr County, Texas.

2. Defendant Daniel Ibarra was at all times relevant to this lawsuit a law enforcement officer employed by the United States of America as an agent of the U.S. Customs and Border Protection, an agency of the U.S. Department of Homeland Security. Daniel Ibarra is or was empowered by law to execute detentions, to perform searches, to seize evidence, and to make arrests for violations of federal law. Daniel Ibarra is sued in his individual capacity.

3. Defendant Agent Urbano was at all times relevant to this lawsuit a law enforcement officer employed by the United States of America as an agent of the U.S. Customs and Border Protection, an agency of the U.S. Department of Homeland Security. Agent Urbano is or was empowered by law to execute detentions, to perform searches, to seize evidence, and to make arrests for violations of federal law. Agent Urbano is sued in his individual capacity.

4. Defendant Agent Sergio Garcia was at all times relevant to this lawsuit a law enforcement officer employed by the United States of America as an agent of the U.S. Customs and Border Protection, an agency of the U.S. Department of Homeland Security. Agent Sergio Garcia is or was empowered by law to execute detentions, to perform searches, to seize evidence, and to make arrests for violations of federal law. Agent Sergio Garcia is sued in his individual capacity.

5. Defendant D. J. Gonzalez was at all times relevant to this lawsuit a law enforcement officer employed by the United States of America as an agent of the U.S. Customs and Border Protection, an agency of the U.S. Department of Homeland Security. Agent D. J. Gonzalez is or was empowered by law to execute detentions, to perform searches, to seize evidence, and to make arrests for violations of federal law. Agent D. J. Gonzalez is sued in his individual capacity

**STATEMENT OF FACTS**

6. Ms. Lopez is a forty-three year-old female and a citizen of Mexico. Except for the approximately ten-day period following her unlawful removal from the United States, Ms. Lopez has resided continuously in the United States since 2003.

7. In or around January 2011, two armed men broke in to Ms. Lopez's home in Garciasville, Texas. The men tied her up, gagged her, threatened to kill her, and held her at gunpoint. They did the same to three of her children, then ages eleven, ten, and five. They also set her car on fire and pushed it into the Rio Grande River. Ms. Lopez reported the crimes first to the Starr County District Attorney and then to the Federal Bureau of Investigation ("FBI"). The FBI investigated the men who kidnapped her and took her hostage as part of a larger investigation of a drug trafficking organization. Between 2011 and 2013, Ms. Lopez fully cooperated with the FBI in their investigation. As a result, the FBI certified Ms. Lopez as a cooperating victim of the crimes of kidnapping and hostage taking, and Ms. Lopez was granted U nonimmigrant status. Her U nonimmigrant status was issued on July 16, 2013, and was valid through July 15, 2017.

8. Ms. Lopez has five children. Three of her children have also been granted U Nonimmigrant Status, and her youngest child is a citizen of the United States. The father of her three minor children, Luis Lopez Rios, has not been involved in their lives since 2005, when he was arrested, prosecuted, and ultimately deported for sexually assaulting his step-daughter, Ms.

Lopez's oldest daughter. Ms. Lopez fully cooperated in the investigation and prosecution of her husband for sexually assaulting her daughter.

9. U nonimmigrant status is a nonimmigrant visa classification created by Congress with the enactment of the Victims of Trafficking and Violence Protection Act on October 28, 2000, Pub. L. No. 106-386, 114 Stat. 1464-1548.

10. Congress' reason for creating the U nonimmigrant visa classification was to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, trafficking of aliens, and other crimes…committed against aliens, while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." Pub. L. No. 106-386 § 1513, 114 Stat. 1464, 1533-34.

11. U nonimmigrant status is granted upon approval of a petition filed by a noncitizen who has been the victim of a specified crime and who has cooperated with law enforcement in the investigation or prosecution of the crime. 8 U.S.C. §§ 1101(a)(15)(U) and 1184(p) (describing requirements for applying for U nonimmigrant status); 8 C.F.R. § 214.14 (outlining regulatory procedures governing applications and adjudications).

12. A grant of U nonimmigrant status accords a noncitizen "lawful temporary resident status" to live and work in the United States. 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 274a.12(a)(19). Noncitizens granted U nonimmigrant status hold such status for at least four years, 8 U.S.C. § 1184(p)(6), but they can apply for lawful permanent resident status after being physically present in the U.S. in U nonimmigrant status for three years. 8 U.S.C. § 1255(m).

13. Since Fiscal Year 2009, the Secretary of Homeland Security has granted over 140,000 U nonimmigrant visas to principal applicants and their family members.[1]

---

[1] *See* United States Citizenship and Immigration Services (USCIS), Number of I-918 Petitions for U Nonimmigrant Status (Victims of Certain Criminal Activities and Family Members) by Fiscal Year, Quarter, and Case Status 2009-

14. Immigration officers are trained on and become knowledgeable of the Immigration and Nationality Act ("INA") and changes to the statue, including the existence of, issuance of, and documentary evidence of U nonimmigrant status.

15. On or about May 1, 2015, Ms. Lopez's then fourteen year-old daughter went missing. Ms. Lopez immediately requested assistance from the Starr County Sheriff's Office in finding and obtaining the return of her daughter. After Ms. Lopez learned that her daughter had run away and was in nearby Camargo, Tamaulipas, Mexico, and at the advice of Detective Osdy Luna, Jr., from the Starr County Sheriff's Office, she made arrangements for a family friend to pick up her daughter in Mexico and bring her to the port of entry in Rio Grande City, Texas.

16. On May 12, 2015, Ms. Lopez's daughter arrived at the port of entry in Rio Grande City, Texas as a passenger in a car driven by a family friend. That same day, Ms. Lopez drove to the port of entry and parked her car in the parking lot on the U.S. side of the border. Ms. Lopez never departed the United States or crossed into Mexico, and therefore, she was not an "arriving alien," as that term is defined by 8 C.F.R. § 1001(q) or an applicant for "admission" as defined in 8 U.S.C. 1101(a)(13)(A). Indeed, she was already lawfully admitted with the grant of her U status on July 16, 2013, and she possessed authorization to live and work in the United States.

17. Ms. Lopez entered the CBP office at the port of entry from the U.S. side. CBP agents brought her daughter into secondary inspection, where Ms. Lopez was waiting along with Detective Luna. While in secondary, Ms. Lopez attempted to explain that her daughter had been granted U nonimmigrant status, had run away, and was arriving as a passenger in the vehicle of a family friend to re-enter the United States.

---

2017 *available at*:
https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/Victims/I918u_visastatistics_fy2017_qtr1.pdf (accessed May, 10, 2017).

18. Ms. Lopez informed CBP agents that she and her daughter had been granted U nonimmigrant status. She showed CBP agents a copy of her Employment Authorization Document (EAD) which contained the correct spelling of Ms. Lopez's name, correct alien number (A#), correct birth date, country of origin, and nonimmigrant status. Ms. Lopez's EAD was valid from July 16, 2013, until July 15, 2017. The EAD additionally indicates the legal basis for Ms. Lopez's employment authorization, category "(A)(19)", which corresponds to 8 C.F.R. § 274a.12(a)(19), the federal regulation authorizing employment authorization incident to status for an individual in U-1 nonimmigrant status. She also showed CBP agents her social security card and valid Texas identification card.

19. Ms. Lopez also showed CBP agents her daughter's EAD and social security card. The EAD contained the correct spelling of her daughter's name, correct alien number (A#), correct birth date, country of origin, and nonimmigrant status. Ms. Lopez's daughter's EAD was valid from July 16, 2013, until July 15, 2017. The EAD additionally indicates the legal basis for Ms. Lopez's daughter's employment authorization, category "(A)(20)", which corresponds to 8 C.F.R. § 274a.12(a)(20), the federal regulation authorizing employment authorization a derivative child of a U nonimmigrant.

20. Rather than exercising their statutory authority to grant Ms. Lopez's daughter parole so that the fourteen-year old child could legally re-enter into the United States to live with her mother in lawful U-nonimmigrant status, the CBP agents simply told Ms. Lopez that her daughter had no right to enter the United States. CBP agents refused to allow Ms. Lopez's daughter enter the U.S. and instead permitted her to withdraw her application for admission and return to Mexico.

21. Irrespective of CBP's decision to deny admission to Ms. Lopez's daughter, CBP agents were presented with evidence that conclusively established Ms. Lopez's lawful presence in the United States.

22. The CBP officer knew or should have known that Ms. Lopez's EAD documented her "lawful temporary resident status" in the United States.

23. The CBP officer did not, and could not, find anything unusual or out of the ordinary about Ms. Lopez's EAD. The EAD was not mutilated or altered and did not otherwise appear to be fraudulent.

24. Nothing in the INA or its corresponding regulations authorizes immigration officers to ignore controlling immigration law or valid immigration documents.

25. The CBP officer intentionally and knowingly rejected the validity of Ms. Lopez's EAD as evidence of her lawful status as a U nonimmigrant visa holder and continued to detain her after she presented the officer evidence of her lawful status.

26. In addition, CBP agents had fingerprinted Ms. Lopez and, therefore, could have used Ms. Lopez's biometric data to verify her valid U nonimmigrant status through the multiple electronic databases to which they had access.

27. The CBP officer knew or should have known that Ms. Lopez was in valid U nonimmigrant status and was not in the United States in violation of any law.

28. Accordingly, the CBP agents lacked any reasonable suspicion or probable cause to detain Ms. Lopez, to arrest her, to initiate any removal proceedings or other related enforcement action against her, or to actually remove her from the United States.

29. Fully disregarding her lawful presence, and without any legal justification, the CBP agents continued to detain Ms. Lopez and told her that that they were going to deport her.

30. When Ms. Lopez asked to see an immigration judge and stated that she was afraid of returning to Mexico, the CBP agents engaged in systematic coercive behavior with the purpose of forcing Ms. Lopez to leave the United States.

31. In response to her request to see an immigration judge, the CBP agents told Ms. Lopez that if she chose to do that, then she would be jailed for three to six months, after which time the judge would automatically deport her.

32. When she told them that she was afraid to return to Mexico, the CBP agents told Ms. Lopez the same thing: that she would be jailed for up to six months and then automatically deported.

33. The agents also told her that, in addition to being incarcerated for several months, her fourteen-year old daughter would be placed in the custody of the Mexican government because she would be without a parent.

34. Ms. Lopez explained how her removal to Mexico would constitute an extreme hardship for her family. Ms. Lopez told the agents that she had minor children under the ages of 18 residing in her custody and that she was their primary caretaker and source of financial and emotional support. She cried and pleaded with the agents not to return her to Mexico.

35. After making all of these coercive statements, and in willful disregard of Ms. Lopez's lawful status, fear of return to Mexico, and desire to see an Immigration Judge, CBP agents then presented Ms. Lopez with documents written in English and told her that she had to sign them to avoid further detention and automatic removal by an immigration judge. The agents knew or should have known that she could not read or understand English. No one translated these documents for Ms. Lopez or explained what they stated.

36. Ms. Lopez did not knowingly or voluntarily waive her right to a removal proceeding before an immigration judge as afforded to her under 8 U.S.C. § 1229a.

37. CBP agents unlawfully refused to allow Ms. Lopez to remain in the United States and coerced her into returning to Mexico on the evening of May 12, 2015, or in the early hours of May 13, 2015.

38. As a result of CBP agents' conduct, Ms. Lopez experienced emotional distress, mental anguish, humiliation, loss of dignity, pain and suffering and lost wages. Ms. Lopez remained in Mexico for ten days after being unlawfully removed. She was unable to work during this time period. Three of her minor children were left without their mother and only caretaker during this time period. Ms. Lopez feared for the well-being of her children. She did not know if she would ever be able to return to the United States to see her children. Even now that she has returned to the United States and remains in U nonimmigrant status, she is terrified that she may be removed again, severing ties with her children and complicating her legal status in the United States.

39. In addition, CBP's unlawful conduct affected Ms. Lopez's ability to permanently regularize her immigration status through adjustment of status under 8 U.S.C. § 1255(m), a process for which, but for CBP's unlawful conduct, she is otherwise wholly eligible.

## CAUSES OF ACTION

### <u>Bivens</u> – Unlawful detention in violation of the 4th Amendment

40. Plaintiff re-alleges and incorporates by reference paragraphs 1-39 above.

41. At all times relevant to this action, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez were acting under color of federal law.

42. The Fourth Amendment to the U.S. Constitution provides that each person has a right to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures.

43. By committing the above-described acts Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez violated Plaintiff Diocelina Lopez-Flores's right to be free from unreasonable seizure as guaranteed by the Fourth Amendment.

44. Because Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez acted in clear violation of well-settled law at the time their conduct was performed, of which a reasonable person would have been aware, Defendants are not entitled to a good faith defense or official or qualified immunity defense.

45. In performing the above-described acts, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez caused Ms. Lopez-Flores's injuries including emotional distress, mental anguish, humiliation, and loss of dignity.

46. Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez performed the above-described acts knowingly, intentionally, maliciously, with deliberate, reckless or callous indifference to Plaintiff Diocenlina Lopez-Flores's civil and constitutional rights or with intent to injure, harass, and oppress Ms. Lopez Flores. Accordingly, Plaintiff Diocelina Lopez-Flores is entitled to punitive damages against Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez.

47. Violations of Plaintiff Diocelina Lopez-Flores's Fourth Amendment rights by Defendants give rise to a cause of action for damages against these Defendants in their individual capacities, pursuant to <u>Bivens</u>.

## <u>Bivens</u> – Denial of procedural due process in violation of the 5th Amendment

48. Plaintiff re-alleges and incorporates by reference paragraphs 1-47 above.

49. At all times relevant to this action, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez were acting under color of federal law.

50. Pursuant to the Fifth Amendment of the United States Constitution, Ms. Lopez had a constitutional life, liberty or property interest in remaining in the United States and in a hearing before an Immigration Judge that could not be deprived without due process. She therefore had a procedural due process right to notice of a hearing and of her right to an attorney as well as a meaningful hearing at a meaningful time regarding her right to relief from removal.

51. Defendants failed to properly notify Ms. Lopez of her right to a hearing, her right to seek an attorney to assist her at that hearing, and failed to provide the meaningful hearing at which she could present her claims for relief from removal before an Immigration Judge.

52. Defendants also failed to obtain a knowing, intelligent, and voluntary waiver of her right to a hearing and her right to seek an attorney to assist her at that hearing from Ms. Lopez.

53. Defendants' decision to refuse to allow Ms. Lopez to remain in the United States and removal to Mexico despite clear and obvious dangers to her well-being and the well-being of her children and without considering the conclusive evidence she presented that she was not legally removable from the United States was arbitrary, irrational, and capricious. Defendants' decisions and actions shock the contemporary conscience.

54. By committing the above-described acts Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez violated Plaintiff Diocelina Lopez-Flores's right to procedural due process as guaranteed by the Fifth Amendment.

55. Because Defendants acted in clear violation of well-settled law at the time their conduct was performed, of which a reasonable person would have been aware, Defendants are not entitled to a good faith defense or official or qualified immunity defense.

56. In performing the above-described acts, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez caused Mr. Lopez-Flores's injuries including emotional distress, mental anguish, humiliation, and loss of dignity.

57. Defendants performed the above-described acts knowingly, intentionally, maliciously, with deliberate, reckless or callous indifference to Plaintiff Diocelina Flores's civil and constitutional rights and/or with intent to injure, harass, and oppress Ms. Lopez-Flores. Accordingly, Plaintiff Diocelina Lopez-Flores is entitled to punitive damages against each Defendant.

58. Violations of Plaintiff Diocelina Lopez-Flores's Fifth Amendment rights by Defendants gives rise to a cause of action for damages against these Defendants in their individual capacities, pursuant to Bivens.

**Bivens – Denial of substantive due process in violation of the 5th Amendment**

59. Plaintiff re-alleges and incorporates by reference paragraphs 1-58 above.

60. At all times relevant to this action, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez were acting under color of federal law.

61. Pursuant to the Fifth Amendment of the United States Constitution, Ms. Lopez had a constitutional life, liberty or property interest in remaining in the United States and in a hearing before an Immigration Judge that could not be deprived without due process. She therefore had a substantive due process right to be free of arbitrary and capricious decisions and actions depriving her of those life, liberty, or property interests.

62. Defendants' decision to forcibly remove Ms. Lopez to Mexico despite clear and obvious dangers to her well-being and the well-being of her children and without considering the conclusive evidence she presented that she was not legally removable from the United States was

arbitrary, irrational, and capricious. Defendants' decisions and actions shock the contemporary conscience.

63. By committing the above-described acts Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez violated Plaintiff Diocelina Lopez-Flores's right to substantive due process as guaranteed by the Fifth Amendment.

64. Because Defendants acted in clear violation of well-settled law at the time their conduct was performed, of which a reasonable person would have been aware, Defendants are not entitled to a good faith defense or official immunity defense.

65. In performing the above-described acts, Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez caused Mr. Lopez-Flores's injuries including emotional distress, mental anguish, humiliation, and loss of dignity.

66. Defendants performed the above-described acts knowingly, intentionally, maliciously, with deliberate, reckless or callous indifference to Plaintiff Diocelina Flores's civil and constitutional rights and/or with intent to injure, harass, and oppress Ms. Lopez. Accordingly, Plaintiff Diocelina Lopez-Flores is entitled to punitive damages against each Defendant.

67. Violations of Plaintiff Diocelina Lopez-Flores's Fifth Amendment rights by Defendants gives rise to a cause of action for damages against these Defendants in their individual capacities, pursuant to Bivens.

**DAMAGES**

68. Ms. Lopez-Flores seeks damages for the emotional distress, mental anguish, humiliation, loss of dignity, physical pain, and lost wages she suffered as a result of Defendants' conduct.

69. Ms. Lopez-Flores is entitled to actual, compensatory, and punitive damages.

## JURY TRIAL DEMAND

70. Ms. Lopez-Flores demands a jury trial on her <u>Bivens</u> claims.

## PRAYER AND RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court provide the following relief:

a) Award Plaintiff Diocelina Lopez-Flores actual, compensatory, and punitive damages, in an amount to be determined at trial, against Defendants Daniel Ibarra, FNU Urbano, Sergio Garcia, and D. J. Gonzalez for claims arising under the U.S. Constitution;

b) Award Plaintiff Diocelina Lopez-Flores any other relief that this Court deems just and proper at law or in equity.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Peter McGraw*
Peter McGraw
Attorney in Charge for Plaintiff
State Bar No. 24081036
S.D. Tex. No. 2148236
316 South Closner Blvd.
Edinburg, Texas 78539
Phone: (956) 393-6230
Fax: (956) 383-4688
pmgcgraw@trla.org

*/s/ Lauren Joyner*
Lauren Joyner
Attorney for Plaintiff
State Bar No. 24098893
S.D. Tex. No.1512168
316 South Closner Blvd.
Edinburg, Texas 78539
Phone: (956) 393-6219
Fax: (956) 383-4688

ljoyner@trla.org

*/s/ Susan L. Watson*
Texas RioGrande Legal Aid, Inc.
311 Plus Park, Ste. 135
Nashville, TN 37217
Tel: (615) 750-1200
Fax: (615) 366-3349
Federal ID No. 567690
Texas Bar No. 24028115
swatson@trla.org